UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THOMAS MILITELLO,
         Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
         Defendant.

---

**DECISION & ORDER**
17-cv-1046-JWF

## Preliminary Statement

Plaintiff Thomas Militello ("plaintiff" or "Militello") brings this action pursuant to Title II of the Social Security Act seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), which denied his application for disability insurance benefits. See Complaint (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 8, 11. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 8) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 11) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

On March 6, 2014, plaintiff protectively applied for disability insurance benefits under Title II of the Social Security Act, alleging complications from a bone tumor and its surgical removal. Administrative Record, Docket # 5 ("AR"), at 60-65; 132-33. Plaintiff's application was initially denied. AR at 60-65.

1

Plaintiff, his attorney, and vocational expert Michele Erbacher ("the VE") appeared before Administrative Law Judge Stephen Cordovani ("the ALJ") on June 30, 2016 for an administrative hearing. AR at 24-58. The ALJ issued an unfavorable decision on September 2, 2016. AR at 10-18. Plaintiff appealed to the Appeals Council ("AC") and the AC denied plaintiff's appeal on August 21, 2017. AR at 1-4. Plaintiff commenced this action on October 17, 2017 (Docket # 1) and filed his motion for judgment on the pleadings on June 15, 2018 (Docket # 8). The Commissioner filed its motion for judgment on the pleadings on July 24, 2018 (Docket # 11) and Militello replied on August 14, 2018 (Docket # 12).

For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

## Discussion

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ did not give significant

weight to any medical opinion – including from plaintiff's treating physician – and the remaining evidence in the record does not support the assigned Residual Functional Capacity ("RFC"). The Court agrees. Pl.'s Mem. of Law (Docket # 8-1), at 7-8.

The only medical opinion evidence in the record from an accepted source was from plaintiff's treating physician, Brian McGrath, M.D.[1] Dr. McGrath rendered two very detailed medical source statements. Both statements provided findings and opinions regarding the exertional limitations of plaintiff. In the first statement, dated May 5, 2014, Dr. McGrath opined that plaintiff could walk less than five city blocks without rest or severe pain, sit for 15 minutes at a time, and stand for 20 minutes at a time. AR at 258. Dr. McGrath determined that in an eight-hour workday, plaintiff would be able to sit for less than two hours and stand or walk for less than two hours. AR at 258-59. He further opined that plaintiff would need five-minute breaks at least twice a day. AR at 259. The second statement, rendered June 9, 2016, contained findings indicating that plaintiff's condition had worsened. In this statement Dr. McGrath noted that plaintiff would not be able

---

[1] The ALJ gave "some weight" to the assessment by physician assistant Robyn Loehfelm – not an acceptable medical source at the time the decision was rendered – that plaintiff was "not fully disabled from all work." AR at 16. The ALJ's characterization of Ms. Loehfelm's opinion is misleading. Ms. Loehfelm indicated that plaintiff was disabled from his past work as a corrections officer; she did not form any opinion as to whether he was disabled for any other job. Her assessment as to his ability to return to his previous job cannot be taken as an affirmative statement that plaintiff was not disabled from all work because her opinion only addressed the corrections officer position.

3

to walk any city blocks without pain or rest and would only be able to sit or stand for 15 minutes at a time. AR at 339. Dr. McGrath reiterated that Militello would only be able to sit and stand or walk for less than two hours and would need to take unscheduled breaks during an eight-hour workday. AR at 340. In the second statement, Dr. McGrath opined that plaintiff was unable to sustain full-time employment "at any exertional level." AR at 341.

Ordinarily, pursuant to the so-called "treating physician rule,"[2] the opinion of a claimant's treating doctor as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)). Here, however, the ALJ gave "limited weight" to these treating physician's opinions, finding that they do not reflect the treatment records and they contradict plaintiff's own testimony that he could engage in a wide variety of activities of daily living. AR at 16.

Neither party claims that the ALJ's treatment of Dr. McGrath's opinions was error and the Court agrees. There was a valid basis

---

[2] These rules were in effect at the time plaintiff's claim was filed.

on the record for the ALJ to determine that Dr. McGrath's opinion of plaintiff's limitations was not consistent with other substantial evidence in the record. For example, after plaintiff's surgery to remove his tumor, he complained of some light pain, but Dr. McGrath indicated that plaintiff was "progressing." AR at 235. Similarly, physician assistant Loehfelm relayed that plaintiff himself believed he was "improving" even though he walked with a limp. AR at 279. By May 2014, plaintiff had good strength and no pain but some moderate tenderness. AR at 280. In November 2014, plaintiff walked with a limp but had a good range of motion. AR at 284-85. Plaintiff continued to have no pain in January 2015 (AR at 298) and a full range of motion and full strength in March 2015 (AR at 300-01). He had some abductor weakness but no pain in May 2015. AR at 288-89. By November 2015, two years after his surgery, plaintiff had some tenderness and weakness with a slight gait, but a normal stance, good strength, and improving muscle fatigue. AR at 291-92. Several months later, in January 2016, plaintiff rated his pain as a 1 out of 10 with some low-level chronic pain in his femur. AR at 322-23. By June 2016 plaintiff was walking without any assistive devices and with a normal, if somewhat tender, gait. AR at 334-35.

In addition, plaintiff's own testimony seemed obviously inconsistent with Dr. McGrath's opinions as to his patient's exertional limitations. At the hearing, Militello claimed that he

5

is capable of a wide range of activities that conflict with his doctor's opinion of Militello's limitations. For example, plaintiff testified that he regularly mows his lawn using a riding mower. AR at 29. Because of the size of his yard, it takes plaintiff three hours to mow the entire lawn. AR at 29. Plaintiff also uses a string trimmer to cut parts of his yard that are not reachable with the riding mower. AR at 30. Plaintiff takes breaks in between trimming the front and back yards. AR at 30. Plaintiff indicated that he is able to sit on the tractor for 45 minutes at a time, after which he needs a break for about 20 minutes and then resumes riding. AR at 42. Militello further testified that he drives (AR at 34), makes marbles in his garage (AR at 38), does laundry in his basement (with some difficulty) (AR at 43), goes hunting (again with some difficulty and only for three hours at a time) (AR at 45-46), fishes for periods of up to four hours (AR at 47), kayaks (AR at 48-49), and has completed minor home improvement projects (AR at 33). Plaintiff's testimony that he is able to engage in sitting or standing activities for periods of multiple hours, even if with some discomfort and with occasional breaks, does not square with Dr. McGrath's medical findings and exertional limitations.

Accordingly, I find the ALJ had the requisite "good reasons" for discounting Dr. McGrath's opinions. But the lack of "good reasons" is not the basis for plaintiff's claim that the ALJ's

6

decision here was not supported by substantial evidence. Even though the ALJ may have been justified in not giving controlling weight to the opinions of Dr. McGrath, the ALJ's ultimate RFC determination must still have an evidentiary basis in the record. Here, having rejected the strict exertional restrictions proposed by the treating physician, the ALJ substituted a different, albeit more lenient, set of exertional limitations for plaintiff – limiting plaintiff to light work that involves sitting for up to six hours and standing or walking for up to four hours. See AR at 14. However, these restrictions, incorporated into the ALJ's RFC for plaintiff, do not have any medical or other evidentiary basis in the record. Indeed, there are no medical source statements in the record from an acceptable source upon which the ALJ could base the RFC he assigned to plaintiff. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an ALJ "is not free to set his own expertise against that of a physician who" submitted an opinion before him); Hazlewood v. Comm'r of Soc. Sec., No. 6:12-CV-798, 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) ("[A]lthough the RFC determination is reserved for the commissioner, the RFC assessment is still a medical determination that must be based on medical evidence of record, and the ALJ may not substitute his own judgment for competent medical opinion.").

The Commissioner concedes this point but relies on Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5 (2d Cir. 2017) (summary order)

7

in arguing that the ALJ could forego medical opinion evidence in formulating an RFC. See Comm'r's Br. (Docket # 11-1), at 18. In Monroe, the Second Circuit explained that where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, . . . a medical source statement or formal medical opinion is not necessarily required." Id. at 8 (internal quotation marks and citations omitted). In Monroe, the Second Circuit held that "[b]ecause the ALJ reached her RFC determination based on the [treating doctor's] contemporaneous treatment notes — while at the same time rejecting his *post hoc* medical opinion ostensibly based on observations memorialized in those notes — that determination was adequately supported by more than a mere scintilla of evidence." Id. at 8-9.

That is not the case here. "While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" Muhammad v. Colvin, No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (internal citation omitted). In other words, "the ALJ may not interpret raw medical data in functional terms." Quinto v. Berryhill, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quoting Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 911-13 (N.D. Ohio 2008)). Thus, where the record

8

does not "contain a useful assessment of Plaintiff's physical limitations," Monroe is of no help to the Commissioner. Johnson v. Comm'r of Soc. Sec., 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018).

My review of the record here shows it is remarkable for the absence of medical evidence regarding plaintiff's functional limitations, save for the two reports of Dr. McGrath which were essentially rejected by the ALJ. The medical record here is sparse and lacks evidence from which the ALJ could formulate the specific limitations – six hours sitting and four hours standing – he determined to be plaintiff's RFC. Where "the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-related capacities, the administrative law judge's 'determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence.'" Palascak v. Colvin, No. 1:11-CV-592, 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014) (quoting Kinslow v. Colvin, No. 12-cv-1541, 2014 WL 788793, at *5 (N.D.N.Y. Feb. 25, 2014)). The treatment notes referencing plaintiff's improvement and noting that he was "doing well" do not relate plaintiff's impairments to any work-related capacity. Nor do the vague references to "improving" translate into specific functional limitations set forth in the RFC. In other words, the treatment records here do little more than convey symptoms and generalities.

They do not form a basis upon which a specific exertional limitation can be formulated. There are no records that would have allowed the ALJ to formulate the very specific exertional and functional limitations he assigned to plaintiff. There are no references in the record to plaintiff being able to sit for six hours or stand for four hours in an eight-hour workday. There are no observations or findings in any medical records suggesting that plaintiff would be able to perform any functions without taking breaks - a limitation conspicuously absent from the RFC. At best, plaintiff's testimony indicates that he may be able to sit for periods of three hours to mow his lawn, albeit with breaks.

Put simply, the ALJ had good reasons to discount the opinions of Dr. McGrath, but he lacked good reasons upon which to base the very specific exertional limitations he included in his RFC. Except for Dr. McGrath's assessment, the medical or functional assessments relevant to plaintiff's ability to perform activities of gainful full-time employment are simply lacking in this record.

> This case does not present the situation contemplated by Monroe, where the ALJ rejected the physician's medical assessment, but relied on the underlying treatment notes, which provided contemporaneous medical assessments relevant to the plaintiff's ability to perform sustained gainful activity. Here, the ALJ did not merely disagree with a medical assessment; rather, no acceptable medical source provided an opinion regarding the physical portion of Plaintiff's RFC, and there are no underlying documents supporting any such evaluation.

Johnson, 351 F. Supp. 3d at 294. On remand, a consultative

examination is clearly warranted. See 20 C.F.R. §§ 404.1519a, 416.919a; Dye v. Comm'r of Soc. Sec., 351 F. Supp. 3d 386, 394 (W.D.N.Y. 2019) ("The ALJ should have, at a minimum, secured a consulting physician to examine Plaintiff and render an opinion as to his functional limitations."); Helwig v. Comm'r of Soc. Sec., No. 1:17-CV-0859 (WBC), 2018 WL 6330242, at *3 (W.D.N.Y. Dec. 4, 2018) ("Failure to obtain a consultative examination where necessary for the ALJ to make an informed decision is remandable error.").

## Conclusion

The ALJ had good reasons for rejecting the opinions of plaintiff's treating doctors. But, for an RFC to be supported by substantial evidence, an ALJ's decision must also be grounded in medical support for the functional limitations used in assigning an RFC to plaintiff. Unfortunately, there is no medical source support in this record for the assigned RFC. Plaintiff may very well be able to work. But the decision denying him benefits contains no assessment of plaintiff's functional limitations by an acceptable medical source, except for the limitations the ALJ justifiably rejected. An ALJ may not substitute his judgment for a competent medical opinion. See Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 913 (N.D. Ohio 2008) ("[A] remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding."). Accordingly, plaintiff's

motion for judgment on the pleadings (Docket # 8) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 11) is **denied** and the case is remanded for further proceedings consistent with this Decision and Order.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 28, 2019
Rochester, New York